IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| RICHARD WARREN PAIGE, JR., | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:10-CV-0222 |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION
TO DENY PETITION FOR A WRIT OF HABEAS CORPUS**

Petitioner RICHARD WARREN PAIGE, JR. has filed a petition for a federal writ of habeas

corpus challenging his state conviction for the felony offense of murder, and the resulting 40-year

sentence. For the reasons hereinafter expressed, the United States Magistrate Judge is of the opinion

petitioner's application for federal habeas corpus relief should be DENIED.

I.
STATEMENT OF FACTS[1] and PROCEDURAL HISTORY

Late in the evening of March 28, or during the early morning hours of March 29, 2006,
several people gathered at Georgia Brown's apartment above the "Wishin' Well" bar
in Amarillo, Texas. Amongst those in attendance were Georgia Brown and her
daughter Melissa Ann Brown. Both ladies' paramours were also present: Johnny
Gonzales was Melissa's boyfriend, and Richard Paige, also known as (a/k/a) "Astro"
was engaged to Georgia. The crowd also included, at various times, a "Samantha" as
well as "Uncle Ray-Ray" and Larry Terry. Donovan Graves (a/k/a "Frog") was also
there.

---

[1]The Statement of Facts is taken from Appellant's Brief filed by appointed counsel. *Paige v. State*, No. 07-07-00190-CR.

At some point during the evening, Melissa came into the room and observed what appeared to be Astro on the floor straddling her mother, and according to her observation, it appeared that Astro was striking Georgia about the head and shoulders with a vodka bottle, although Georgia herself indicated it did not hurt, and Frog said it just looked like they were playing.  Nevertheless, at that point Astro, who always carried a little sheath-knife on his belt, was ejected from the premises, with a blanket and pillow in order to "cool off."  Melissa and Johnny left to get cigarettes.  While they were gone, at some point Astro re-entered the apartment and observed Georgia sitting on Larry's lap:

Q:      Did anything happen suddenly then while you were talking to Larry?

A:      Yeah.  I was sitting on his lap, and then he pushed me on the floor.  That is when Astro came through the door.  His eyes got big, he pushed me on the floor, and Astro stabbed him.

Q:      Where did he stab him?

A:      In his shoulder, I think, right here (pointing).  I mean, right here (pointing).

Q:      By that, you are referring to this part of the shoulder (pointing)?

A:      Yeah, I think.  Right around there.  I am not exactly sure.

Q:      Did Astro say anything before he came in?

A:      Huh-uh.  I didn't even know he was in there until I seen him come up after Larry.

Q:      What happened after he stabbed Larry?

A:      Larry stood up.  And then he pushed him in the floor in the kitchen.  And then he started screaming.  And then he started to stab him.  And I tried to grab the knife, and it cut my hand. And then I screamed.  And then he – I didn't see him stab him no more.  He just got up and ran out the door.  I didn't know if he left down the stairs or what.

Q:      When you say he ran out the door, he ran out the door down the stairs?

A:      Yeah.

Q:      What did you do then?

A:      I didn't know whether to go down the stairs.  So I went to the window and jumped out of the window and ran over to Wanda Sue's and told her to call the police and ambulance, because he stabbed him.

Astro fled the scene and eventually encountered Frog:

A:      And then the next morning his hand was cut and all.  Looked like a knife
        folded on him.  And I told him, "You've got to get rid of your clothes.  You've
        got to get out of town."  And I went and seen that tape.  I go – I go, "Hmm.
        Something's happened."  There is police tape all over the parking lot and all.
        And then when I told him, he goes, "Hell, I could have killed him."  And I told
        him I didn't want no names or nothing.  I didn't even know what we were
        talking about at the time.

Q:      When did he tell you this?

A:      That morning when I went – when he woke – you know, got up and asked him
        where he slept.  Because I didn't see him.  He said he ended up sleeping behind
        the couch.  See, he woke me up after he stabbed – and came and woke me up.
        And I told him, "Well, go ahead and crash on the couch."  And I fell back out.
        Right after the altercation with him and Terry, he told me he had stabbed him.

The victim, Larry Terry, received two stab wounds to the chest, one of which was fatal, stab wounds

to the forearm and thigh, an incised wound to the hand, and blunt force injuries.

Petitioner was subsequently arrested behind a convenience store several blocks away.  In a

statement given to the police upon his arrest, petitioner averred it was "a shock" when he entered the

apartment, and that he "blanked out" and basically did not remember what happened next.  Petitioner

stated he remembered:

[R]olling around on the kitchen floor with the man.  It was my knife.  Georgia was
trying to get the knife too.  I think she did end up with the knife.  I think she was going
to stab me.  She didn't stab me but I remember her having the knife in her hand.  I
grabbed the knife out of her hand and it cut her hand.  The guy is still in the kitchen
but I was concerned with Georgia.  I said I'm going to call an ambulance.  From the
time I saw her sitting on that man it was a blank spot in my mind.  I was wrestling
around and we were fighting to get control of the knife.  He must have been fighting
after he was stabbed, I don't know when. . . .  Apparently I stabbed this guy but I don't
remember.  It's got to be me that did it.  Georgia didn't have a reason to stab him.  I
don't have a memory.  Georgia could have stabbed the man when she was trying to
stab me.  I don't remember everything that happen[ed].

On March 29, 2006, in Potter County, Texas, petitioner was charged by complaint with

committing the first degree felony offense of murder.  Specifically, it was alleged petitioner did:

> [I]ntentionally and knowingly cause the death of an individual, namely, Larry Benton Terry, by stabbing Larry Benton Terry with a knife.

*State v. Paige*, No. 31,001-C.  On September 7, 2006, petitioner was indicted for the same offense.

*State v. Paige*, Cause No. 53,570-D.  The indictment included a deadly weapon notice alleging "that during the commission of this offense [petitioner] did use or exhibit a deadly weapon, namely a knife, that in the manner of its use and intended use was capable of causing death or serious bodily injury.  The State subsequently provided notice of its intent to seek an enhanced punishment of imprisonment for 25-99 years or life, based on petitioner's prior felony convictions.

At trial, Georgia Brown testified petitioner entered the room and stabbed the victim in the left shoulder area, pushed the victim to the ground, and was on top of the victim until he stood up and ran from the room.  Vol. 3 at 161-70.  Brown testified that the initial stabbing she observed could not have been accidental, and that she never observed the knife in the victim's hand.  Vol. 3 at 162, 169.  Brown testified her hand was cut when she attempted to take the knife from petitioner during the altercation.  The medical examiner testified that the stab wounds to the chest "in no way indicated" that the wounds were of an "accidental nature," and that the other wounds to the victim could have been defensive wounds.  Vol. 4 at 86, 88.  There was also the testimony of Frog (quoted above) and petitioner's statement to the police.  Blood from petitioner, the victim, and Brown were found at the scene as well as on the knife.  At trial, the police acknowledged that due to the voluminous blood samples, not all samples were tested for DNA.  When petitioner was arrested, he had two lacerations on his hand, one requiring stitches.

Petitioner, the defense's only witness, testified he entered the apartment and told the victim "the party's over" and "[y]ou're going to have to leave."  Vol. 4 at 116-17.  Petitioner denied being angry or jealous at the time.  Petitioner stated the victim responded by stating, "We're going to have to

fight," in a "threatening tone of voice."  Vol. 4 at 117.  Petitioner testified the victim then "reached over and unsnapped" the sheath on petitioner's belt, pulled out petitioner's knife, and opened the knife, while the victim was seated in a chair with Brown on his lap.  Vol. 4 at 118-19.  Petitioner testified he tried to grab the knife out of petitioner's hand to disarm him, that a fight ensued between petitioner and the victim but also involved Georgia jumping on petitioner's back, and that the stabbing occurred during the struggle for the knife.  Vol. 4 at 119-21.  Petitioner denied inflicting the victim's wounds, denied having the knife in his hand at any time during the struggle, denied knowing the victim had been stabbed, having "done anything wrong," or intentionally hurting or "deliberately stabbing" the victim.  Vol. 4 at 123-26, 133, 135.  In fact, petitioner testified the victim "stabbed himself."  Vol. 4 at 149.  Petitioner testified that after the struggle ended, he took the knife from Georgia, closed it and placed it in its sheath on his belt, and left to call an ambulance.  Vol. 4 at 124.  Petitioner also opined the referenced "blank spots" in his statement to the police upon his arrest was from the loss of blood due to a cut to his hand, shock over what had happened, or sleepiness during the event.  Vol. 4 at 120, 140, 147.  Petitioner averred he was unable to read his statement without glasses but did acknowledge signing the statement.  Vol. 4 at 154.

After the close of the guilt/innocence phase of the trial, the trial court advised counsel for the parties, "Counsel, the way I see this at the present time, it is just a plain murder charge:  He did it or he didn't do it."  Vol. 4 at 168.  The trial court further stated "self-defense has not been raised in my opinion."  *Id*.  The trial court proposed "to provide a charge to the jury on guilt or innocence, which is a straight murder charge, and allow them to decide either he did or he did not."  Vol. 4 at 169-70.  This charge did not include an instruction on self defense.  In response to the court's query as to whether the defense had any objection to the charge, defense counsel replied:

> I do not, Your Honor.  Based on the evidence and testimony I heard here in open court
> that would be before the jury, my client has not alleged that he was defending himself

or that he even knowingly committed the crime at all; and, therefore, I would submit
that it is a sufficient instruction to the jury.

The charge did include a specific instruction as to the definition of "intentionally" or "knowingly."

On April 5, 2007, a jury found petitioner guilty of the offense of murder as alleged in the
indictment, and found petitioner used or exhibited a deadly weapon in the commission of the offense.
Petitioner pled true to the two (2) prior felony conviction enhancements and, on April 6, 2007,
following a punishment hearing, the jury assessed petitioner's punishment at forty (40) years
imprisonment in the Texas Department of Criminal Justice, Correctional Institutions Division.
Corresponding judgments were signed April 13, 2007 and filed of record April 17, 2007.

Petitioner appealed his sentence to the Court of Appeals for the Seventh District of Texas.  On
December 10, 2007, appointed appellate counsel filed an *Anders* brief stating he "researched the law
applicable to the facts and issues contained therein, and it [was his] professional evaluation that no
reversible error [was] reflected by the record."[2]  On July 28, 2008, petitioner filed a *pro se* brief
arguing:

1.    The prosecution failed to prove petitioner "intentionally" caused the victim's
death beyond a reasonable doubt;

2.    The issue of self-defense entitling defendant to an instruction on self-defense
was raised by defendant's testimony;

3.    Prosecutors failed to produce exculpatory evidence to the defense without
which defendant could not prove the victim was the perpetrator;

4.    The trial court's failure to give a charge on a lesser included offense was error;

5.    The deadlocked jury was coerced into rendering a verdict as a result of the
pending Easter weekend; and

6.    Defendant was denied effective assistance of counsel.

---

[2]Counsel did, however, set forth a ground of error that could arguably support an appeal, *to wit*:  whether trial counsel was
ineffective for failing to object to the inclusion of an instruction on self defense in the jury charge during the guilt/innocence
phase of the trial.

On August 13, 2008, the appellate court affirmed petitioner's sentence in an unpublished opinion finding the court's independent review failed to reveal any arguably reversible error. *Paige v. State*, No. 07-07-0190-CR. Petitioner filed a petition for discretionary review which was refused *per curiam* by the Texas Court of Criminal Appeals on February 4, 2009. *In re Paige*, No. PD-1333-08.

On October 30, 2009, petitioner filed a state application for a writ of habeas corpus challenging the constitutionality of his sentence on the following grounds:

1.  Petitioner's "conviction [was] obtained by [the prosecution's] unconstitutional failure to disclose evidence favorable to defendant";

2.  "The State failed to prove each element of murder beyond a reasonable doubt";

3.  "[The] Judge's opinion on issue of self-defense not being raised and exclusion of instruction [on self-defense] in jury charge was judicial indiscretion";

4.  "[The] jury failed to rationally apply fundamental substantive constitutional beyond-a-reasonable doubt standard to [the] facts of evidence";

5.  "Ineffective assistance of court appointed attorney";

6.  "Cumulative effects of trial errors denied impartial jury and fair trial"; and

7.  "Obstruction of justice causing structural error, sabotaged the framework within which the trial proceeded.[3]

*In re Paige*, No. 72,964-01.

On January 13, 2010, the Court of Criminal Appeals interpreted petitioner's 5th ground as alleging "that his trial counsel was ineffective for failing to conduct an adequate pre-trial investigation, for failing to file a motion for a change of venue, [] for failing to request a jury charge on self-defense," and "for instructing [petitioner] to destroy all evidence related to his case after his conviction." The court also found petitioner alleged "the trial court's failure to charge the jury on self-defense deprived [petitioner] of a fair and impartial trial." The court remanded the case to the

---

[3]The State's answer to petitioner's state habeas application only identified five (5) grounds.

trial court to resolve fact issues and to provide trial counsel with the opportunity to respond to

petitioner's claim of ineffective assistance of counsel.  Counsel was directed to file an affidavit

addressing:  (1) whether counsel instructed petitioner to destroy evidence related to his case after his

conviction; (2) whether counsel interviewed State witness Georgia Brown as part of his pre-trial

investigation; (3) whether counsel requested that any forensic evidence be subject to independent

testing as part of his pre-trial investigation; (4) whether counsel filed a motion for a change of venue

in this case; and (5) whether counsel requested that the trial court charge the jury on self-defense.  The

trial court was instructed to make findings of fact on the issues set out above and was further

instructed to make findings of fact as to whether the performance of petitioner's trial attorney was

deficient and, if so, whether counsel's deficient performance prejudiced petitioner.

On April 8, 2010, the Senior District Judge who presided over petitioner's trial by assignment

executed an affidavit stating:

> [Trial counsel] did not file a motion for a change of venue.  However, the Reporter's
> Record reflects that no member of the jury panel knew [petitioner] or the victim in this
> case.  In addition, there is nothing in the record of the voir dire examination indicating
> that there was any difficulty in selecting a jury or that there was so great a prejudice
> against [petitioner] that he was unable to obtain a fair and impartial trial in Potter
> County, Texas.
>
> . . .
>
> [Trial counsel] did not request that I charge the jury on self-defense.
>
> . . .
>
> At his trial, [petitioner] testified that he did not inflict any wounds on the victim and
> denied that he ever hurt the victim with a knife.  Therefore, there was no evidence that
> [petitioner] reasonably believed that deadly force was immediately necessary to protect
> himself against the victim's use or attempted use of unlawful deadly force.
>
> After the State and the defense rested at the guilt-innocence phase of the trial, the issue
> of whether [petitioner] had raised self-defense was discussed on the record.  [Trial
> counsel] stated he was not requesting an instruction on the law of self-defense since
> [petitioner] was not alleging that he was defending himself or that he even knowingly

committed the crime at all.  It was also my opinion that the evidence at trial did not raise the issue of self-defense and that [petitioner] was not entitled to have the jury instructed on the law of self-defense.

. . .

The record fails to reflect that [trial counsel] requested any forensic evidence be subjected to independent testing as part of his pre-trial investigation.

. . .

[Trial counsel's] cross-examination of Ms. Georgia Brown at the trial, indicates that [trial counsel] had not interviewed Ms. Brown as part of his pre-trial investigation.

On April 13, 2010, petitioner's trial counsel executed an affidavit stating:

Pursuant to the State's 'open file' policy, prior to trial I reviewed the written statement Ms. Georgia Brown gave to the Special Crimes Unit of the Amarillo Police Department.  I also interviewed Ms. Georgia Brown on several occasions in the hallway and outside the Potter County Courthouse during the course of [petitioner's] trial.  However, I was unable to interview Ms. Brown as part of my pretrial investigation.

. . .

As part of my pre-trial investigation, I made a thorough review of the Serology/DNA Report prepared by the Texas Department of Public Safety Crime Laboratory which was contained in the State's file in this case.  However, I did not feel that it was necessary to request that any forensic evidence be subjected to independent testing as party of my pretrial investigation.  Therefore, I did not make a request for any independent testing.

. . .

I did not file a motion for a change of venue because, in my opinion, there was not a sufficient bases [sic] to establish that [petitioner] could not receive a fair trial in Potter County, Texas due to prejudicial or inflammatory news coverage concerning his case.

. . .

I did not request the trial court to charge the jury on the law of self-defense.  I did not request that a self-defense instruction be included in the charge to the jury since there was no evidence that [petitioner] reasonably believed that deadly force was immediately necessary to protect himself against the victim's use or attempted use of unlawful deadly force.  Therefore, since the evidence did not raise the issue of self-defense, it was my opinion that [petitioner] was not entitled to have the jury instructed

on the law of self-defense.

On May 19, 2010, the state district judge entered the following findings of fact:

1.      Petitioner's trial counsel conducted an adequate pre-trial investigation;

2.      Petitioner's trial counsel did not file a motion for a change of venue;

3.      Petitioner's trial counsel did not instruct petitioner to destroy evidence related to his case after his conviction;

4.      Petitioner's trial counsel did not request that the trial court charge the jury on self-defense;

5.      The evidence presented at trial was not sufficient to raise an issue as to self-defense; and

6.      Petitioner's trial counsel was not deficient in his representation of petitioner.

The trial court concluded petitioner's trial counsel rendered effective assistance of counsel in his representation of petitioner.  On August 25, 2010, the Texas Court of Criminal Appeals denied petitioner's state habeas application without written order on the findings of the trial court without a hearing.

On September 16, 2010, petitioner filed with this Court the instant federal habeas corpus petition.[4]  On January 14, 2011, respondent filed an answer opposing petitioner's request for federal habeas corpus relief.  On January 31, 2011, petitioner filed a reply to respondent's answer.

II.
PETITIONER'S CLAIMS

Petitioner claims his conviction is in violation of the United States Constitution because:

1.      Petitioner's "conviction [was] obtained by [the prosecution's] unconstitutional failure to disclose evidence favorable to defendant";

---

[4]Petitioner also filed a pleading entitled "Petitioner's Memorandum of Harm" which is 85-pages long.  Not only does this pleading far exceed the 25-page limit for briefs, *see LR 7.2(c)*, it is repetitive in many respects and devotes a significant amount to petitioner's version and interpretation of the evidence at trial.

2.     "[The] State failed to prove each element of murder beyond a reasonable doubt";

3.     "[The] Judge's opinion on issue of self-defense not being raised and exclusion of instruction [on self-defense] in jury charge was judicial indiscretion";

4.     "[The] jury failed to rationally apply fundamental substantive constitutional beyond-a-reasonable doubt standard to [the] facts of evidence";

5.     "Ineffective assistance of court appointed attorney";

6.     "Cumulative effects of trial errors denied petitioner [an] impartial jury and fair trial"; and

7.     "Obstruction of justice causing structural error, sabotaged the framework within which the trial proceeded."


### III.
### STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody under a

state court judgment shall <u>not</u> be granted with respect to any claim that was adjudicated on the merits

in state court proceedings unless that person <u>first</u> shows the prior adjudication:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A decision is contrary to clearly established federal law if the state court arrives

at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if

the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*,

210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  A state court decision will be

an unreasonable application of clearly established precedent if it correctly identifies the applicable

rule but applies it objectively unreasonably to the facts of the case.  *Williams*, 529 U.S. at 407-08; *see also Neal v. Puckett*, 286 F.3d 230, 236, 244-46 (5th Cir. 2002) (en banc per curiam), *cert. denied*, 537 U.S. 1104 (2003).

A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding.  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct.  The petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence.  *Hill*, 210 F.3d at 485.  When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption.  *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex.Crim.App. 1997); *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (the Fifth Circuit recognizes this Texas state writ jurisprudence).

Petitioner filed a state habeas application challenging the constitutionality of his sentence and presented the same grounds raised in this federal habeas petition.  The Court of Criminal Appeals denied petitioner's state habeas application without written order on the findings of the trial court without a hearing.  *Ex parte Paige*, No. 72,964-01.  The ruling of the Texas Court of Criminal Appeals on these grounds constituted an adjudication of petitioner's state habeas corpus claims on the merits.[5]  *Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999); *cf. Ex parte Thomas*, 953 S.W.2d 286 (Tex.Crim.App. 1997); *Ex parte Torres,* 943 S.W.2d 469 (Tex.Crim.App. 1997) (under Texas law a

---

[5]The term "adjudication on the merits" in 28 U.S.C. § 2254(d) addresses whether the state court's disposition of the claim at issue was procedural or substantive.  *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir.2002) ( *en banc* ).  Nothing in this case suggests the Texas Court of Criminal Appeals disposed of petitioner's claims on a procedural basis.  *See Barrientes v. Johnson,* 221 F.3d 741, 778-80 (5th Cir.2000), *cert. dismissed,* 531 U.S. 1134 (2001) (setting forth analysis to determine whether state court adjudication was merits-based).  The state court denial qualifies as a full and fair review of the grounds raised therein.  This Court must treat the state court's "denial" – based on the findings of the trial court – as a merits adjudication of petitioner's state habeas application.  *See Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999).

denial by the Court of Criminal Appeals signifies the court addressed and rejected the merits of the claims).  Therefore, the deferential standard set forth in 28 U.S.C. § 2254(d) is applicable to this case and must be demonstrated by petitioner.  Consequently, this Court's review is limited to a determination of (1) whether petitioner has shown the state court's determination that petitioner's claims were without merit was based on an unreasonable determination of the facts in light of the evidence before the state court, or (2) whether petitioner has shown the state habeas court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## IV.
## MERITS

On state habeas review, the trial court analyzed petitioner's claims of ineffective assistance of counsel and trial court error in failing to include a jury instruction on self-defense, and made specific findings that petitioner's claims were without merit.  The Texas Court of Criminal Appeals, based on these findings of the state trial court, determined petitioner was not entitled to state habeas corpus relief on these claims, and further determined petitioner was not entitled to state habeas relief on his remaining claims.  Petitioner has not demonstrated the state court's determination was based on an unreasonable determination of the facts in light of the evidence before the state court.  Petitioner does not refer to any Supreme Court opinion containing a "materially indistinguishable" set of facts that controls this case.  Nor has petitioner shown the state habeas court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  In fact, petitioner does not argue the state habeas courts arrived at a conclusion opposite to one reached by the Supreme Court on a question of law.  Petitioner simply reasserts the same claims he made in his state habeas application and makes no effort to demonstrate

the level of error required by the AEDPA.  Petitioner has not met his burden of proof in order to obtain federal habeas corpus relief under the AEDPA on any of his claims, thus, petitioner is not entitled to federal habeas corpus relief and his petition should be denied.

### A. *Failure to include a self-defense instruction*

By his third ground,[6] petitioner argues the trial court abused its discretion in finding the issue of self-defense was not raised and in failing to include an instruction in the jury charge on self-defense.[7]  Again, during the state habeas corpus proceedings, the trial judge submitted an affidavit wherein he addressed whether the evidence presented at trial raised an issue as to self-defense (set forth in full above).  Noting petitioner's testimony that he did not inflict wounds on the deceased and his denial that he ever hurt the victim with a knife, the trial judge found the evidence did not raise an issue of self-defense.  The trial judge noted defense counsel also acknowledged petitioner did not allege he was defending himself but, instead, claimed he did not knowingly commit the crime at all.  The state habeas court denied this claim, effectively agreeing with the trial court judge that the evidence did not raise an issue of self-defense.  Petitioner has failed to argue, much less show, the state court's decision was contrary to, or an unreasonable application of, Supreme Court law.  Moreover, although it is not the function of this federal court to review a state court's interpretation of its own laws, the undersigned has reviewed the evidence at trial, including petitioner's testimony, and finds the evidence does not appear to raise an issue of self-defense, even under state law.[8]  Petitioner's

---

[6]The state trial court made specific findings as to two of petitioner's grounds, and state habeas relief was denied based on these findings.  Although out of order, these grounds are addressed first.

[7]To the extent, if any, petitioner is asserting an error of state court procedure, such a claim is not cognizable on federal habeas review.  *Smith v. Phillips*, 455 U.S. 209, 221 (1982).

[8]During petitioner's testimony, defense counsel asked, "Did you ever draw your knife and use it in any way to protect yourself?"  The State objected to the question as leading, and the trial court sustained the objection.  Vol. 4 at 133.

position, based upon his testimony, was that he did not inflict any stab wounds on the victim, did not

have the knife in his hand at any time during the struggle, and that the multiple stab wounds were self-

inflicted by the victim.  At the most, petitioner maintained that if he did stab the victim, he did not do

so intentionally or deliberately   Vol. 4 at 123-26, 133, 135, 149.  During direct examination, defense

counsel did ask petitioner, "Did you ever feel that you needed to defend yourself?"  Petitioner replied,

"From him with the knife, yes."[9]  However, considering the whole of petitioner's testimony, this

single response was not sufficient evidence to raise the issue of whether petitioner reasonably believed

that deadly force was immediately necessary to protect himself against the victim's use or attempted

use of unlawful deadly force.  More importantly, petitioner denied using deadly force.  Consequently,

to the extent petitioner claims constitutional error as a result of the state trial court's failure to include

an instruction on self-defense in the jury charge, the undersigned finds petitioner's claim without

merit.  Petitioner's third ground should be DENIED.

## B. *Ineffective Assistance of Counsel Claims*

By his fifth ground, petitioner contends he was denied effective assistance of counsel at trial.

Specifically, petitioner appears to argue counsel was deficient because counsel failed to:

1.     Initially interview petitioner in a timely manner, or more thoroughly discuss
       with petitioner his version of what happened on the night in question prior to
       trial;

2.     File motions in limine to safeguard petitioner from any prejudice regarding his
       prior criminal record, knowing petitioner was going to testify at trial;

3.     Conduct any pretrial discovery or file pretrial motions fundamental to pre-trial
       and trial strategies;

4.     Investigate the facts of the case or interview witnesses for the defense;

---

[9]Petitioner clarified:  "That's it.  That was the only danger.  I was trying to actually be careful not – so he didn't hurt himself, you know.  There was a drunk guy with a knife."  The State's objection to petitioner's reply as nonresponsive, however, was sustained.  Vol. 4 at 134.

5.      Obtain indispensable exculpatory evidence and exhibits for the defense;

6.      Prepare and present a self-defense strategy at trial, and request an instruction on self-defense in the jury charge;

7.      Timely file the "Motion to Produce Evidence Favorable to the Defendant";

8.      Voir dire the jury with regard to exposure to pre-trial publicity of the case and file a motion for a change of venue based on pre-trial publicity;

9.      Request a psychological evaluation of witness Georgia Brown;

10.     Elicit important facts by cross-examination and demonstration, emphasize inconsistencies in Brown's testimony, or expound on petitioner's testimony; and

11.     Object to the prosecution's stated expectation of the testimony during opening statements and characterization of the testimony and summarization of the evidence during closing argument.

In order to obtain habeas corpus relief on the ground of ineffective assistance of counsel, a petitioner must demonstrate not only that his counsel's performance was deficient, but must also show the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To demonstrate deficiency, the petitioner must show counsel's actions "fell below an objective standard of reasonableness." *Id*. at 668, 104 S.Ct. at 2064. A strong presumption exists "that trial counsel rendered adequate assistance and that the challenged conduct was reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066). To demonstrate prejudice, a petitioner must show that a "reasonable probability" exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome [of a criminal trial]." *Id.* This is a heavy burden which requires a "substantial," and not just a "conceivable," likelihood of a different result. *Harrington v. Richter*, ___U.S.___, 131 S.Ct. 770,

787, 178 L.Ed.2d 624 (2011); *see also Cullen v. Pinholster*, ___U.S.___, 131 S.Ct. 1388, 1403, 179

L.Ed.2d 557 (2011).  If a petitioner fails to show either the deficiency or prejudice prong of the

*Strickland* test, then the Court need not consider the other prong.  *Id.* at 697, 104 S.Ct. at 2069.

The Sixth Amendment requires counsel "to make a reasonable investigation of defendant's

case or to make a reasonable decision that a particular investigation is unnecessary." *Ransom v.*

*Johnson*, 126 F.3d 716, 723 (5th Cir. 1997).  Strategic choices made after a thorough investigation of

both the law and facts are "virtually unchallengeable." *Strickland*, 466 U.S. at 690-91.  Even strategic

choices made after a less than complete investigation are "reasonable" to the extent that reasonable

professional judgments support the limitations on investigation.  In determining the reasonableness of

an attorney's investigation, this court must directly assess a particular decision not to investigate "for

reasonableness in all the circumstances, applying a heavy measure of deference to counsel's

judgments." *Id.*  The court must also consider not only the evidence already known to counsel, but

whether such evidence would lead reasonable counsel to investigate further. *Wiggins v. Smith,* 123

S.Ct. 2527, 2538 (2003).  The reasonableness of an investigation depends in large part on the

information supplied by the defendant. *See Ransom*, 126 F.3d at 123.  Counsel should, at a minimum,

interview potential witnesses and independently investigate the facts and circumstances of the case.

*Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994).  Even so, counsel is not required to investigate

everyone mentioned by the defendant." *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985).

Petitioner contends defense counsel was deficient throughout the trial for the reasons he

alleges above.  Petitioner raised all of these claims in his state habeas application.  The trial court

made findings of fact with regard to petitioner's claims of deficient performance and prejudice, and

concluded trial counsel rendered effective assistance of counsel in his representation of petitioner.

The Texas Court of Criminal Appeals denied relief based on these findings.  By rejecting these

ineffective assistance claims, the state courts necessarily found counsel's performance was not deficient and/or that petitioner was not prejudiced by counsel's performance.

Petitioner has failed to argue, much less show, the state courts' decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented in any of the state court proceedings.  Petitioner has not met this threshold standard of review for federal habeas corpus relief, nor has he demonstrated the merits of his ineffective assistance of counsel claims would otherwise entitle him to federal habeas corpus relief.  Consequently, even if this Court disagreed with the state court determinations, petitioner has not demonstrated he is entitled to federal habeas relief by showing the state court decisions were both incorrect and objectively unreasonable.

Moreover, petitioner has failed to provide any evidence to rebut the finding that trial counsel was not deficient, or that petitioner was not prejudiced by trial counsel's performance.  Even if this Court were to assume, for purposes of argument, that petitioner's trial counsel performed deficiently in some respect, petitioner has offered no evidence he was prejudiced.  The premise of the majority of petitioner's claims appears to be that had counsel taken the additional steps identified by petitioner, the jury would have believed petitioner's version of the events and would have acquitted petitioner based on his self-serving testimony.  Petitioner's testimony, however, was contradicted by Brown's testimony and by some of the physical evidence.  Further, petitioner presents no evidence of a "reasonable probability" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  Petitioner has not shown a substantial probability sufficient to undermine confidence in the outcome of his trial.  At most, petitioner presents only an argument that a different result is "conceivable," an insufficient showing for federal habeas corpus relief.  Petitioner's claims should be DENIED.

## C.  *Brady Claim*

In *Brady v. Maryland*, 373 U.S. 82 (1963), the United States Supreme Court held the suppression by the prosecution of evidence favorable to an accused after a request violates due process where the evidence is material either to guilt or punishment.  To establish a *Brady* violation, a defendant must prove (1) the prosecutor suppressed or withheld evidence; (2) which was favorable; and (3) material to the defense.  *Moore v. Ilinois*, 408 U.S. 786, 794-95 (1972); *Ogle v. Estelle*, 641 F.2d 1122, 1124 (5th Cir. 1981).  Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  *United States v. Bagley*, 473 U.S. 667, 684 (1985).  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial.  *Id.* at 678, 684.

By his first ground, petitioner claims his conviction was obtained by the State's unconstitutional failure to disclose evidence favorable to petitioner's defense in violation of *Brady*. Petitioner identifies the following favorable and material "evidence" the State allegedly suppressed or withheld from petitioner in violation of *Brady*:  fingerprint evidence on the knife, which petitioner alleges would have shown the victim's fingerprints on the knife; a pool of blood at the crime scene, which petitioner contends DNA testing would have established was his blood; a bloody blanket from behind the apartment, where petitioner contends he lay unconscious from loss of blood for three (3) hours after the incident.  Petitioner contends that if he had been provided with the above evidence, he could have established he was not the aggressor in the altercation, and that he was not competent to give his statement to the police after his arrest, thereby resulting in his acquittal.  Petitioner also appears to complain of the failure to obtain independent testing or expert testimony of the physical evidence, and the State's purported failure to comply with petitioner's motion to produce favorable evidence.

First, there is nothing in the record supporting petitioner's claim that the State failed to disclose favorable evidence within its possession.  Not only does petitioner fail to demonstrate any such evidence was in existence, he fails to show any evidence was exculpatory or that such evidence was suppressed by the State.  The State had an open file policy and all evidence in their possession was available to defense counsel.  Petitioner's actual argument appears to be that the State did not further process available evidence and that this amounted to improperly withholding exculpatory evidence.  Even if there were some duty on the State to further process evidence, petitioner's contentions that such further processing of evidence would have resulted in evidence favorable to petitioner is entirely speculative, conclusory and self-serving.  Petitioner has not shown the State possessed any additional evidence that, in fact, was exculpatory or in any way favorable and material to petitioner's case, or that the State suppressed or withheld any such evidence.  Nor has petitioner shown a reasonable probability that had any additional analysis of evidence been performed and such results disclosed to the defense, that the result of the proceeding would have been different.  Petitioner's first ground should be DENIED.

### D.  *Insufficient evidence of intent element*

By his second ground, petitioner argues the State failed to prove the element of intent for the offense of murder at trial.  Construing this ground liberally, the undersigned interprets petitioner to be alleging the evidence at trial was legally and factually insufficient to support his conviction.

For purposes of federal habeas corpus review, a state conviction need only satisfy the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  To determine the legal sufficiency of the evidence, a federal court must consider whether, viewing all the evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a

reasonable doubt." *Id.* at 318-19, 99 S.Ct. at 2789.  In making this determination, the reviewing court must resolve all credibility choices and conflicting inferences in favor of the fact finder.  *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999), *cert. denied*, 531 U.S. 822, 121 S.Ct. 65, 148 L.Ed.2d 31 (2000).  It is the fact-finder's responsibility alone "to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.  The reviewing court must determine if the evidence is constitutionally sufficient to support the conviction, *i.e.*, whether the evidence satisfied the "substantive elements of the criminal offense as defined by state law."  *Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991).

It is the sole province of the jury as the finder of fact to assess the credibility of the witnesses and to choose among reasonable constructions of the evidence.  *See United States v. Green*, 180 F.3d 216, 220 (5th Cir. 1999).  A jury is not to be second-guessed by a reviewing court in its choice of which witnesses to believe.  *See United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995).  On federal habeas review, "[a] federal court may not substitute its own judgment regarding the credibility of witnesses for that of the state courts."  *Marler v. Blackburn*, 777 F.2d 1007, 1012 (5th Cir. 1985).  Moreover, "[t]he habeas corpus statute obliges federal judges to respect credibility determinations made by the trier of fact."  *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993).

During the trial of this case, multiple witnesses testified, including petitioner, as to the events surrounding the death of the victim and petitioner's subsequent actions.  Numerous exhibits of the crime scene, the knife and sheath, and petitioner's clothing, were admitted into evidence.  The jury judged the credibility of the testimony and evidence, evaluated the demeanor of the witnesses, and decided how much weight should be given to their testimony.  The jury acted within its proper scope in drawing reasonable inferences from the evidence and resolving any conflicts in the evidence

against petitioner.  Petitioner has failed to present evidence rendering the jury's determinations invalid, and is simply attempting to have this court second-guess the jury's credibility choices, implicit factual findings, and resolution of conflicts in the evidence.  Giving due deference to the jury's determination as this court should, the undersigned finds petitioner's claim there was legally insufficient evidence to support his conviction is without merit.

Further, based on a review of the record as a whole, a rational finder of fact could have found the evidence presented established the essential elements of the offense of murder, including the element of intent, beyond a reasonable doubt.[10]  Not only did the testimony of Georgia Brown and the medical examiner indicate the stabbing could not have been accidental, the entirety of the evidence, the circumstances prior to and after the victim's death, and the incredulity of petitioner's belated version of the events, and inferences drawn therefrom, allowed the jury to find the intentional nature of petitioner's actions.  Petitioner's insufficiency claim is without merit and should be DENIED.

### E.  *Jury did not apply beyond reasonable doubt standard*

By his fourth ground, petitioner asserts the jury failed to rationally apply the standard of beyond a reasonable doubt.  Again construing this ground liberally, the undersigned interprets petitioner's claim to allege the evidence at trial was legally insufficient to support his conviction.

Petitioner again has failed to present evidence rendering the jury's determinations invalid.  In addition, petitioner completely fails to show the jury did not apply the appropriate burden of proof in this case.  Once again petitioner is attempting to have this court second-guess the jury's findings.  Applying the same analysis as above, the undersigned finds petitioner's claim that there was legally insufficient evidence to support his conviction is without merit.  A rational finder of fact could have

---

[10]The state appellate court, in finding no reversible error and affirming petitioner's conviction on direct appeal, implicitly found the evidence was sufficient to support petitioner's conviction for murder.  *Paige v. State*, No. 07-07-0190-CR (Tex.App. – Amarillo 2008, pet. ref'd).

found the evidence presented established the essential elements of the offense of murder beyond a reasonable doubt. Petitioner's claim that the jury applied an incorrect burden of proof is without merit and should be DENIED.

### F.   _Denial of a fair trial due to cumulative errors_

By his sixth ground, petitioner argues the cumulative effect of the errors alleged above deprived him of his right to an impartial jury, a fair trial, and due process. The cumulative effect of errors, none of which individually are significant, can be collectively significant. _Kyles v. Whitley_, 514 U.S. 419, 436-37, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Relief can be granted for cumulative error where the errors committed (1) involved matters of constitutional dimension; (2) were not procedurally defaulted; and (3) "so infected the entire trial that the resulting conviction violates due process." _Derden v. McNeel_, 978 F.2d 1453, 1454 (5th Cir. 1992). Petitioner has failed to demonstrate any of his claims of alleged errors have merit. Consequently, petitioner fails to show he was denied due process as a result of cumulative error. Petitioner sixth ground should be DENIED.

### G.   _Denial of a fair trial due to obstruction of justice_

By his seventh ground, petitioner appears to argue various acts on the part of the State, the trial court, defense counsel and the police amounted to "obstruction of justice" resulting in the denial of a fair trial. Petitioner asserts what appears to be approximately eleven (11) different sub-claims, the majority of which have been addressed under the grounds above. Claims not previously addressed, _i.e._, faulty police work and false police reports, the admission of non-relevant evidence and perjured testimony at trial, are supported only by petitioner's self-serving, conclusory allegations. Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions, unsupported and unsupportable by anything else contained in the record, to be of probative

evidentiary value.  *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983).  There is nothing in the record to support petitioner's claims.  Consequently, petitioner's claims are subject to summary dismissal.  At a minimum, petitioner's seventh ground should be DENIED.

## V.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by petitioner RICHARD WARREN PAIGE be DENIED.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 19th day of June 2013.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and

Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).